# GREEN v. STEWART.

PROMISSORY NOTES; BONA FIDE HOLDER IN DUE COURSE; TRIAL.

1. In an action by the holder against one of the indorsers of a promissory note, it is no defense that at the time the plaintiff bought the note an arrangement existed between the defendant and a prior party to it, to whom the purchase price was paid, whereby the defendant was to receive a portion thereof, and that such prior party failed to make the proper application as between himself and the defendant, provided the plaintiff himself was not required to make such application; and, under such circumstances, it is immaterial whether the plaintiff had knowledge of such arrangement or not.

2. Where in an action at law the plaintiff proves all of the facts essential to entitle him to recover, and they are not controverted by the defendant, the fact that the parties contradict each other on immaterial and irrelevant matters does not make it necessary to submit the case to the jury, but under such circumstances it is proper to direct a verdict for the plaintiff.

3. Where the purchaser of a promissory note takes as additional security a bond and mortgage and requires the maker of them also to indorse the note, the taking of them does not increase or limit to any extent the liability of the indorser to the purchaser of the note.

No. 1399.    Submitted April 13, 1904    Decided May 4, 1904.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, upon a verdict for the plaintiff directed by the court, in an action on a promissory note.                                        *Affirmed.*

The COURT in the opinion stated the case as follows:

This is a suit at common law by David Stewart, the holder of a promissory note, against Galen E. Green, the indorser thereof. The substantial facts of the case, disengaged from a mass of useless and irrelevant details, are these: One O. F. Clifford, of Baltimore, in the State of Maryland, sold some mining stock to Charles W. Slater, of this city, and the latter gave in payment

therefor his promissory note for $5,000, drawn to the order of Clifford, dated on February 27, 1901, and payable in four months thereafter, with interest. Clifford sought to negotiate the note through one John J. Riordan, of Baltimore, to whom he was indebted in the sum of $3,100, or thereabouts; and he induced Riordan to have it discounted under an agreement between them that Riordan would give him credit for the $3,100, and pay the residue to him, after deduction of whatever should be paid for the discount. Riordan presented the matter to the appellee, David Stewart, who, after considerable examination and interviews with some of the other parties in interest, agreed to discount the note, charged $300 for his so doing, paid $1,600 to Riordan, and agreed to hold the remaining $3,100 of the note for him. Riordan then, besides crediting Clifford with $3,100, on account of Clifford's indebtedness to him, proceeded to pay to the latter about $700, and was prevented from paying the remainder of the $1,600 by a notice from the appellant, Galen E. Green, to the effect that Clifford had failed to keep faith with him (Green) in regard to the matter.

Green's connection with the transaction is as to its origin left in some obscurity by the record. But this much seems to be clear enough, that when the note was first presented to Stewart for discount it was accompanied by a peculiar instrument of writing executed by Green, which purported to be a bond combined with a deed of trust on real estate, to secure the payment of the note; but the note itself did not at that time bear the indorsement of Green or show any connection of Green with it. Before he would discount the note Stewart required that Green should indorse it, and should likewise execute another bond combining in itself a deed of trust, not differing in substance from the first instrument of writing, but acknowledged by Green so as to be entitled to record, the first instrument having been sworn to but not acknowledged. Green claims that his indorsement of the note was given upon some understanding with Clifford, or with Clifford and Slater, that he should receive $1,000 for it out of the proceeds of the discount; that this sum was not

paid to him by Clifford, who, strangely enough, was not called by either party to testify; and that, in consequence of such nonpayment, he gave the notice to Riordan which has been mentioned. This nonpayment of $1,000 for his indorsement is the burden of Green's defense to this suit instituted by Stewart in the supreme court of the District of Columbia, to recover the amount of the note from him upon his indorsement, when the note upon its maturity was not paid and was duly protested for nonpayment.

There are vague intimations of fraud advanced by some of the parties to the transaction, but they are too vague to be considered. And there are likewise some intimations of liens or charges against the stocks sold by Clifford to Slater, and which it would seem that Clifford was expected to pay; but these intimations also are too vague and intangible to be the subject of serious consideration. In their testimony the parties contradict each other in various details, but neither are these details at all important in the determination of the case.

In his declaration the plaintiff had two special counts on the note, and joined to these the common counts. The defendant Green, who alone was sued, pleaded the general issue and want of notice of dishonor of the note. The notice of protest was conclusively proved, and is not sought to be controverted. And the only other defense, as already stated, was the failure of Green to receive the $1,000 promised to him by Clifford as the consideration for his indorsement. Upon this condition of the pleadings and testimony the trial court directed the jury to return a verdict for the plaintiff. Upon this verdict there was judgment, from which the defendant has appealed.

*Mr. John Ridout* for the appellant.

*Mr. Charles W. Clagett* for the appellee, who also appeared in proper person.

Mr. Justice MORRIS delivered the opinion of the Court:

We fail to find any merit in this appeal. The execution of the promissory note in suit, the indorsement of the appellant Green, and the protest of the note upon its dishonor, are fully proved, and there is not even the pretense of an attempt to controvert these facts, which make a prima facie case for the plaintiff. The sole ground of defense is that the appellant did not, after the discount of the note by the appellee, receive the sum of one thousand dollars ($1,000), which he claims was the consideration required by him for his indorsement. It is very plain from his own statement, if it be true, that this sum of $1,000 was to be paid to him out of the proceeds of the discount of the note, and not by Stewart, but by Clifford, and that he trusted in the latter for such payment. There is no pretense that either Stewart or Riordan was to pay it, or that they had any actual knowledge of the fact, if fact it be, that Green was to receive such payment from Clifford. And even if they had such knowledge it is not apparent how it should affect their rights in the premises. The note was to be discounted before its proceeds could be available for payment to anyone; and we must confess our inability to understand on what rule of law or of common sense the person who discounted such a note, and who was not himself required to make any application of the proceeds of the discount, should be held as a holder in bad faith because the person to whom the proceeds were paid and who was entitled to receive them failed to make the proper application as between himself and some other person, whose interest did not appear if he did actually so fail, for we are not satisfied from the testimony in the case that the appellant Green was entitled to receive any such sum of money from Clifford. Strangely enough, Clifford was not called by either party to testify. The plaintiff had no occasion to call him, and it may be assumed that if he had been called his testimony would not have been favorable to the appellant.

The appellant claims, and it is his only claim, that the case should have been submitted to a jury. But we are at a loss to

understand what issues there were which required consideration by a jury. As we have said, all the essential facts required to be proved by the plaintiff were proved, and they are not in any manner controverted. It is true that the parties contradict each other in various matters of detail which have been imported into the case; as, for example, on an issue which was raised as to whether the plaintiff in the cause was in Washington in the month of February, 1901, and as to the dates of some interviews which took place between the parties. These matters are wholly irrelevant and unimportant, and throw no light whatever on the subject-matter of controversy; and to submit the matter to the jury upon any such issues would have been highly improper. There was nothing for a jury to determine.

There are vague cries of fraud and collusion, which do not rise even to the dignity of charges; and they have no ground whatever in the record to sustain them. So far as the record before us shows, if there was any fraud attempted or perpetrated, or if any collusion existed, it was not on the part of plaintiff or Riordan, but rather on the part of the appellant and his associates in the transaction, who seek, without any just cause, to repudiate their liability. The consideration for the promissory note on the part of its maker, Slater, was ample. It is shown that the stocks were not worthless; and that, on the contrary, even before Green's indorsement was placed upon the note, Slater had sold them for a considerably enhanced price. There is some pretense on the part of the appellant that these stocks would be worthless without the payment by Clifford of some liens or charges claimed to have been against them in some unexplained way in some western country, and which it seems to be claimed that Clifford was bound to pay and intended to pay out of the proceeds of the discount of the note in suit. But this pretense is clearly unfounded, for the existence of such alleged liens or charges did not prevent Slater from selling the stocks at a profit. And even if it were the fact that there were such liens and charges which Clifford was bound to pay, it is not apparent to us how this fact, even if it were known to Stewart

and Riordan, could have in any manner affected the validity of the promissory note here in suit in the hands of either.

It is too plain for argument that the note in question is, to the extent at least of the sum of $1,600, which he actually paid to Riordan upon it, valid in the hands of Stewart. And it may be added that there is no serious controversy as to the right of Stewart to recover on the note also the amount of $300 charged by him for his professional services in the examination of the transaction for Riordan. That he holds the residue of the note, amounting to $3,100, for Riordan, is conceded by him; and as to this part it may be assumed that any legal defense that might be interposed by Green against Riordan could be interposed also against the plaintiff.

But no more against Riordan than against Stewart do we find any valid defense whatever set up in the record. It is shown by the plaintiff, and it is not controverted, that, in consideration of this note, Riordan canceled an indebtedness from Clifford to himself of an indebtedness amounting to $3,100, and that he undertook to pay him the residue, $1,600, in cash, after deducting Stewart's fee of $300, from the proceeds of the discount by Stewart. It seems that he proceeded to pay him this sum of $1,600 in various amounts, and that he had actually paid to him about $700, when he was stopped by a letter of somewhat obscure meaning received by him from Green. But we fail to see how this circumstance should vitiate the note either in the hands of Stewart or in the hands of Riordan himself. It is not shown, nor is it even pretended, that Riordan was to make any payment of $1,000, or of any other sum, to the appellant Green. That payment, if to be made at all, was to be made by Clifford to Green out of the proceeds of the discount; and Riordan was doing the very thing which was required to be done when he proceeded to pay over the $1,600 to Clifford. If the sum of $1,000 was due and payable by Clifford to Green, and there was reasonable apprehension on the part of Green that Clifford would not pay it, Green had his remedy, but that remedy was not in the direction of a repudiation of his liability under his indorsement. It

is not shown that Riordan had any knowledge of the arrangement between Green and Clifford; but if he had, it is not apparent that it should make any difference in regard to Green's liability on his indorsement. Riordan gave full value for the note when he canceled the indebtedness of Clifford to himself and paid, or assumed to pay, and proceeded in good faith to pay, to him the additional sum of $1,600. And he had no reason to suppose, so far as the record shows, that he (Clifford) would not pay the $1,000 to Green, and also to discharge any liens or charges that might have been against the stock out of this sum of $1,600. So far as we are advised, this sum was ample for all purposes. The liability of Clifford to Green, therefore, if it had any existence in fact, is no defense to Green's liability to Stewart or Riordan upon his indorsement of the note.

The defense, in fact, under any theory of the case, is most shadowy and unsubstantial, and utterly devoid of merit. It may be noticed that, in placing his indorsement on the note, Green assumed no greater liability than he already had in relation to the note, although he put it in different form. Prior, confessedly, to any intervention of either Stewart or Riordan in the transaction, so far as the record shows, he had executed a bond and a kind of mortgage to secure the payment of the note; and these went with the note, first to Clifford and then to Riordan and Stewart, and they were made an auxiliary to the negotiation of the note. Stewart preferred also to have a formal indorsement of the note by Green. This did not increase in any manner or to any extent the liability of the latter. It only served to connect better the note with the bond and mortgage, and to make the liability of Green more available for commercial purposes.

We think that the judgment appealed from should be affirmed, with costs. And it is so ordered.                    *Affirmed.*